## McKinney *versus* Snyder.

78    497|
29 SC ³599|

1. The object of a point is to obtain a clear and reliable instruction to aid the jury in the formation of an intelligent verdict.

2. The court should decline to receive a point when it is so obscurely worded as to confuse the jury.

3. An acknowledgment of a debt to take it out of the Statute of Limitations must be made to the creditor or his agent.

4. An acknowledgment of a debt made to the agent of the creditor without the knowledge of the debtor that he was such agent has no more force than if made to a stranger.

5. A promise to pay to take a debt out of the statute ought to be made under circumstances which indicate an actual intention to pay.

6. The Act of 1869 allowing parties to testify should prevent the relaxing of any of the rules of law under the Statute of Limitations and of Frauds.

May 12th 1875.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1875, No. 95.

This was an action of assumpsit, brought November 19th 1872, by Henry Snyder against S. D. McKinney, to recover a balance which the plaintiff alleged was due on account of the purchase-money of a store sold to the defendant on the 3d of May 1860. The only question in the case was raised by the plea of the Statute of Limitations.

The case was tried January 18th 1875, before Herman, P. J.

The plaintiff testified that he sold his store to the defendant and W. L. McCullough for $1488.94; McCullough paid the half of this sum in the year 1860; the defendant made partial payments on the other half up to the spring of 1862, when a balance was struck, showing $297.84 against him; he continued to occupy plaintiff's store during that year, at the end of which there was due for rent the further sum of $50, making the whole amount then owing the plaintiff to be $347.84.  Plaintiff further said, that he had a conversation with defendant in 1873; he said he owed plaintiff about $350, and thought he would pay him before long; wanted to pay plaintiff as well as other creditors; there had been different conversations about the claim, but in the last defendant was positive he would pay before long.

George Jacoby testified: * * * "About three years ago I met McKinney on the train going from here to Newville; I urged him to come back to his old place and buy Sherman out; he said he didn't think it would suit, as he and Snyder were not on good terms; he didn't think he would rent to him; said he owed Snyder, and I said, how much is it? he said between $300 and $400; I told him he would better fix it up, that they were both good men, and they ought not to be at loggerheads; he said he intended to pay it, and he would pay it; in his conversation he said the debt

28 P. F. SMITH—32

[McKinney *v.* Snyder.]

he owed Snyder was an old debt on account of the store; Snyder gave me accounts to collect; this account against McKinney was one."

On cross-examination, he said : * * * " Didn't go to Mercersburg to collect this account; didn't write to him; met him in cars by accident; had only one conversation with him since he moved away, which was the one on the train; had conversation about account before he moved away—evening before he went; he told me he was moving next day; I urged him to stay; said he would like to stay, but that he and Snyder had got at loggerheads, and he would have to go; that he was afraid he would give him trouble; he gave me to understand the troubles were financial troubles about the balance."

The defendant testified in direct contradiction to both the plaintiff and Jacoby.

The plaintiff's third point, which was affirmed, was : " If the jury believe that the testimony is contradictory in itself, and inconsistent with truth, and that the defendant has been contradicted in material facts, the plaintiff is entitled to recover."

The following were points of the defendants, with their answers :—

3. The testimony of Jacoby, even if believed by the jury, does not show a definite, certain, precise, unambiguous admission of a debt due to the plaintiff, and a promise to the plaintiff to pay immediately. It not being proved that McKinney had any knowledge that witness was acting for Snyder, the plaintiff, or that he was Snyder's agent, nor is it shown that Jacoby communicated to Snyder the conversation of McKinney with him, Jacoby.

Answer. "We cannot answer this point exactly as requested, but say that if Jacoby were acting as the agent of plaintiff for the collection of this debt, and defendant knew of such agency, then the evidence of Jacoby shows such an acknowledgment of the debt and promise to pay it by the defendant as would remove the bar of the statute. There is, however, no evidence in this case tending to show that the alleged agency of Jacoby was communicated to defendant."

5. The plaintiff having failed to prove such an admission of the debt and promise to pay as takes the case out of the Statute of Limitation, he cannot recover.

Answer. "We cannot answer this point as requested. There is some evidence, though slight, of the acknowledgment of the debt and promise to pay. This evidence, however, is contradicted by the positive denial of defendant, and it becomes a question of fact for you to determine whether there was within six years next preceding the time of bringing this suit, an unqualified and direct admission of the debt and promise to pay it by defendant, and that such admission was made to the plaintiff.

The verdict was for the plaintiff for $574.48.

[McKinney v. Snyder.]

The defendant took a writ of error, and assigned for error the answers to the points.

*W. F. Sadler* (with whom was *J. M. Weakley*), for plaintiff in error.—Admissions to Jacoby were of no avail to take the case out of the statute, unless defendant knew that he was the agent of the plaintiff: Farmers' and Mechanics' Bank *v.* Wilson, 10 Watts 262 ; Morgan *v.* Walton, 4 Barr 321 ; Kyle *v.* Wells, 5 Harris 290. The admission must be positive, distinct, unqualified, such as would maintain the promise in a declaration : Tanner *v.* Smart, 6 B. & C. 602 ; Hart *v.* Prendergast, 14 M. & W. 741 ; Laforge *v.* Jayne, 9 Barr 410.

*A. M. Rhoads*, for defendant in error.—Jacoby's statement was corroborative of the plaintiff's testimony: Davis *v.* Steiner, 2 Harris 279. An unequivocal admission of indebtedness is sufficient to take a case out of the statute: McClelland *v.* West, 9 P. F. Smith 487. The admission and evidence was for the jury: Barwell *v.* Wirth, 11 P. F. Smith 133. The promise was certain and within full reach of the statute: Yaw *v.* Kerr, 11 Wright 333 ; Wolfensberger *v.* Young, Id. 516 ; Hazlebaker *v.* Reeves, 2 Jones 264 ; Fries *v.* Boisselet, 9 S. & R. 128 ; Eckert *v.* Wilson, 12 Id. 393 ; Bailey *v.* Bailey, 14 Id. 195.

Mr. Justice PAXSON delivered the opinion of the court, May 24th 1875.

The plaintiff's third point as submitted was insensible, and ought not to have been affirmed. It is impossible for us to form even a rational guess at the effect, if any, of such a point upon the minds of the jury. It may have misled them ; by no possibility could it have thrown any light upon the questions of fact which they were called upon to determine. The true object of submitting a point to the court is to obtain a clear and reliable instruction to aid the jury in the formation of an intelligent verdict. The court should decline to receive a point, when it is so obscurely worded as to confuse rather than enlighten the jury.

There was error in the answer of the learned judge of the court below to the defendant's third point. It should have been affirmed. There was not a *scintilla* of proof to show that the defendant knew that Jacoby was acting as Snyder's agent. In the absence of such knowledge, the admission has no more force than if made to a stranger.

We are aware that the unbroken current of English authority, with perhaps the exception of a *dictum* of Baron Parke's in Rodgers *v.* Arch, 10 Exchequer 333, in which he dissents from the rest of the court, is full to the point that a promise made to a stranger is sufficient to take the case out of the statute. So too are the de-

[McKinney *v.* Snyder.]

cisions of many of our sister states: Minkler *v.* Minkler, 16 Verm. 194; Bird *v.* Adams, 7 Geo. 55; Bloodgood *v.* Bruer, 4 Sand. 427; Watkins *v.* Stevens, 4 Barb. 168; Carshore *v.* Hwyck, 6 Id. 583; Titus *v.* Ash, 4 Foster 319.   But the rule is different in this state.   It was distinctly and definitely decided in Kyle *v.* Wells, 5 Harris 286, that a promise, to take the case out of the statute, must be made to the plaintiff or his agent.   Kyle *v.* Wells was followed by Gillingham *v.* Gillingham, decided at the same term, and reported in the same volume, at page 302, in which the same principle is reasserted.   While our own cases are clearly at variance, upon this point, with the current of authority elsewhere, we prefer to adhere to them, not only because the maxim *stare decisis* ought not to be departed from unless for weighty reasons, but also because we believe our own rule a sound one.   To attempt to reconcile the conflicting decisions upon the Statute of Limitations would be a hopeless task.   There is no branch of the law upon which the courts of the different states have differed more widely, particularly as to what is a sufficient promise to take a case out of the statute.   Our own rules being not only well settled, but supported by sound reason, we propose to adhere to them.   If the promise be made to an agent of the plaintiff, we think it necessarily follows that the defendant must be aware of the agency at the time of the promise.   A promise made to a stranger is a mere declaration of intention, which the promissor may change at pleasure.   To be binding upon him it ought to be made under circumstances which indicate an actual intention to pay the debt; not a mere loose declaration.   As was observed in Kyle *v.* Wells, *supra*, " it is a perversion of the word promise to apply it to a declaration made to one who has no interest in, or connection with, the subject spoken of."   In the Farmers' and Mechanics' Bank *v.* Wilson, 10 Watts 261, it was held that an acknowledgment, such as will avoid the operation of the statute limiting the time within which an action may be brought for the recovery of lands, must be made to the owner, or his agent *known as such*.   Says Huston, J.: " No loose conversations, no inferences from what was said many years ago ; no expressions to neighbors, or strangers to the title, will deprive a man of the protection of this most beneficial statute."   We may well apply by analogy this vigorous language to the present case. The practical working of the recent Act of Assembly, allowing the parties in a controversy to be examined as witnesses on their own behalf, admonishes us that it would be unwise to relax any of the rules of law in cases arising under the Statute of Limitations, and of Frauds and Perjuries.   We see no further error in this record. To have answered the defendants' fifth point affirmatively, would have withdrawn the case from the jury.   This could not have been done under the evidence given by the plaintiff.

Judgment reversed, and a *venire facias de novo* awarded.