## Addams *against* Seitzinger.

1ws243
182  606
1 WS 243
30 SC  287
j 30 SC  291

An endorsement on a note, of a payment on account, in the handwriting of the holder, proved to have been made within six years from the date of the note and time of suit brought, is evidence which will prevent the operation of the statute of limitations.

ERROR to the Common Pleas of *Berks* county.

Peter Addams and Elijah Deckert, administrators of John Addams, deceased, against Jacob W. Seitzinger.

This was an action of *assumpsit* on a note, to which the defendant pleaded *non assumpsit infra sex annos.*

The plaintiff gave in evidence the following note:

"On demand I promise to pay John Addams or order, six hundred dollars, without defalcation, for value received. Reading, Sept. 4, 1827.

JACOB W. SEITZINGER."

And proved that said John Addams died in November 1832. That the following endorsements or entries on the back of said promissory note, are in the handwriting of said John Addams;

"Interest paid up, February 17th, 1829,

JNO. ADDAMS."

"Received three hundred and fifty dollars on the within note at different times, January 31st, 1829.

JNO. ADDAMS."

The plaintiffs then offered to read the said entries or endorsements in evidence, to take the case out of the statute of limitations; defendant objected to the evidence; the court sustained the objection, and overruled the testimony; to which decision of the court the plaintiffs excepted.

Error assigned:

The court erred in rejecting the entries or endorsements on the back of the note, and in deciding that the same did not take the case out of the statute of limitations.

*Strong*, for plaintiff in error, argued that inasmuch as the endorsements were made with in six years, the plaintiffs' intestate could have had no motive to make them other than in accordance with a corresponding payment. He died within the six years, which furnishes conclusive proof as to the honesty of the endorsements. Besides, such endorsements are legal evidence.

14 *Pick.* 387; *Doug.* 651; 17 *Johns.* 182; 1 *Law Lib.* 99; 2 *Stark. Ev.* 597.

*Smith*, for defendant in error. The note is payable on demand; the endorsements therefore would furnish proof by the mere act of the plaintiff that demand was made, and entitle him to interest. This might furnish a motive inconsistent with the truth of the case. A party can not make evidence for himself. 2 *Hen. Black.* 340; 2 *Vent.* 151; 2 *Watts* 215; 1 *Root* 187, 239; 4 *Pick.* 110.

The opinion of the Court was delivered by

GIBSON, C. J.—Endorsements or memorandums of payments, as acknowledgment of debt to avoid the consequences of lapse of time, were never much encouraged by the English judges; and they have been finally prohibited, as regards the statute of limitations, by the 9 G. 4. c. 14, though they may still be used in the English courts, to rebut the presumption of payment which ordinarily arises from the lapse of twenty years. Yet the objection usually made to their competency, that they enable a party to make evidence for himself, is more specious than solid. If the statute had closed upon the right, or the foundation of the presumption were complete when the memorandum was made, an objection to it would be unanswerable; but it is impossible to conceive of a motive for fabricating such a memorandum while the right of action remained unimpaired. To suppose that a creditor would set about the commission of what is at least a moral forgery, to obviate the anticipated consequences of his own apprehended supineness, when he might, by bringing immediate suit, prevent the occurrence of those consequences altogether, is absurd. The legal presumption is in favour of innocence where there is no violent probability of guilt. But the rule, guarded as it was in England, and as it still is here, allows not such a memorandum to go to the jury, unless it appear to have been made when the creditor had no motive to give a false credit, but when, on the contrary, he had the all-prevailing inducement of interest to avoid the appearance of it; that is, when the period necessary to give effect to the statute or to raise a presumption of payment had not elapsed, and consequently when to give a false credit would have been to throw so much away. With this qualification, such evidence cannot operate injuriously; for it is not to be supposed that a creditor could so far mistake his interest, as to sacrifice a part of his debt to save the residue, when no part of it was in danger. It is possible that a weak man might do so; but it is inconsistent with the ordinary course of human action. The rule is not only essentially a good one, but it is no more than an extension of the principle which allows entries or memorandums, which were prejudicial to the interest of the writer where his testimony cannot

[Addams v. Seitzinger.]

be had, to be evidence of a fact in a controversy between strangers; thus substituting for the sanction of a judicial oath, the more powerful sanction of a sacrifice of self-interest. In the case before us, it is certain that the credits were endorsed before the statute had run its course. The note was drawn in 1827; and the endorsements, both in the handwriting of the creditor, who died in 1832, are dated in 1829; so that the period required by the statute had not run round even at his death. Such was the case which was offered to be proved; and the evidence of it ought to have been received.

Judgment reversed, and a *venire de novo* awarded.